UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN
_____

**TODD MICHAEL REARDON**
10717 N. Gazebo Hills Parkway East,
City of Mequon, WI  53092

Case No.18cv1722

-and-

**JOHN ROBERT REARDON,**
10717 N. Gazebo Hills Parkway East,
City of Mequon, WI 53092
                Plaintiffs
vs

**MATTHEW SCHOSSOW**
In His Official Capacity As Police Officer and
Individually;
c/o City of Meqon Police Department
11300 N. Buntrock Ave.
Mequon, WI  53092

**KRISTIN L. SUDINSKI-TORYFTER**
In Her Official Capacity As Police Officer and
Individually;
c/o City of Meqon Police Department
11300 N. Buntrock Ave.
Mequon, WI  53092

**CITY OF MEQUON**
A Municipal Entity
c/o City Clerk – service of process
11333 N. Cedarburg Rd.,
Mequon, WI  53092

**JOHN(S) and/or JANE(S) DOE**
Presently Unidentified Persons or Entities

                Defendants

---

## COMPLAINT

---

NOW COME THE PLAINTIFFS -AND EACH OF THEM- BY UNDERSIGNED

COUNSEL, as and for their respective Complaints against the

Defendants, and each of them, allege as follows upon information and belief:

## I. NATURE OF ACTION

101. Plaintiffs bring this action for damages caused by the violation of their civil (constitutional) rights per 42 U.S.C. §1983, against the Defendants, and each of them; as Plaintiffs were subjected to certain conduct by Defendants under color of state law, which deprived Plaintiffs of rights, privileges, and/or immunities guaranteed them under Federal Law &/or the U.S. Constitution.

102. Specifically, Plaintiffs allege that Defendants fraudulently procured a search warrant, and executed thereupon, which resulted in unconstitutional searches and seizures of their personal, family residence; all of which caused Plaintiffs damage as alleged herein.

103. Plaintiffs specifically allege the police conduct violated Plaintiffs' rights under (the Fourth, Fifth, and/or Fourteenth Amendments to the United States Constitution and) Federal Civil Rights Statutes.

104. The individual Defendants, as more particularly alleged herein, include a supervisory-level officer.

105. Presently unidentified defendants identified as Jane(s) and/or John(s) Doe(s) are adult residents of the State of Wisconsin; and/or are legal entities; who are proper and/or necessary parties hereto;  and may include insurance companies, non-law-enforcement personnel, and/or City of Mequon Police Department officers, employees, or other such persons or entities.

106.      The City of Mequon is named as a direct-liability Defendant, and as an indemnification Defendant.

## II. JURISDICTION AND VENUE

### A.    JURISDICTION:

201. This court has jurisdiction over this action pursuant to 28 U.S.C §1343(a)(3) and  28 USC 1343(3) and 28 USC 1331-- i.e.,  42 U.S.C.§1983 jurisdiction.

### B.    VENUE:

202. The United States Federal Court for the Eastern District of Wisconsin is the proper venue for this action, because Plaintiffs' claims arose within the geographical boundaries thereof, within the meaning of 28 U.S.C.§1391(b).

## III. PARTIES

### A.    PLAINTIFFS:

301. Plaintiff Todd Michael Reardon is an adult resident of the State of Wisconsin, who on the dates and times referenced herein, was the leaseholder occupant and patriarch of the single

3

family home (and land) located at 10717 N. Gazebo Hills Parkway East, City of Mequon, Ozaukee County, Wisconsin (hereinafter, the "Plaintiffs' Residence"; wherein the aforementioned unconstitutional deprivations occurred; which is within the jurisdictional territory of this Eastern District of Wisconsin Federal Court); and who is the father of co-Plaintiff John Robert Reardon.

302. Plaintiff John Robert Reardon is an adult resident of the State of Wisconsin, who -on the date and time of the police-actions alleged herein, resided at Plaintiffs' Residence and who was arrested and (municipally) prosecuted as a result of the Defendant's actions and inactions, alleged herein (and who is the son of co-Plaintiff Todd Robert Reardon, referenced above.)

**B. DEFENDANTS:**

303. Defendant MATTHEW SCHOSSOW, is an adult resident of the State of Wisconsin and is named as a party-defendant, In His Official Capacity As Police Officer and Individually; and who at all times mentioned herein, was employed by and/or was an agent or apparent agent of, the City of Mequon Police Department (and/or a "sergeant" thereof), acting within his scope of employment and under the color of law; and has the capacity to sue and be sued; and that based upon the allegations herein he is a necessary and proper party hereto.

304. KRISTIN L. SUDINSKI-TORYFTER is an adult resident of the State of Wisconsin and is named as a party-defendant, In Her Official Capacity As Police Officer and Individually; and who at all times mentioned herein, was employed by and/or was an agent or apparent agent of, the City of Mequon Police Department, acting within her scope of employment and under the color of law; and has the capacity to sue and be sued; and that based upon the allegations herein she is a necessary and proper party hereto.

305. Defendant CITY OF MEQUON is an incorporated municipality entity existing within the State of Wisconsin and is a unit of local government, whose agent and address for service of process is c/o City Clerk, 11333 N. Cedarburg Rd., Mequon, WI  53092;  which has the capacity to sue and be sued in this Court; and is directly liable to Plaintiffs –and each of them- for the damages caused by its unconstitutional policies, practices, and/or customs alleged herein below; and is otherwise obligated to defend this action against the Defendants and to satisfy any judgment entered against any or all of them, by virtue of §895.46, Stats.; and that based upon the allegations herein it is a necessary and proper party hereto.

306. Defendants JANE(S) and/or JOHN DOE(S) are presently unidentified adult residents or other legal entities of (including insurance companies doing business within) the State of Wisconsin and having the capacity to sue and be sued; whose

addresses are likewise presently unidentified; including those who, at all times mentioned herein, were acting under the direct control and supervision of the City of Mequon and/or its Police Department and within the scope of his or her employment, and under the color of law; and that -based upon the allegations herein-  he, she, it, and/or they are a necessary and proper party/parties hereto.

## IV.  ALLEGATIONS OF FACT AS TO ALL CAUSES OF ACTION

401. This lawsuit concerns the actions and inactions of various members of the City of Mequon Police Department ("CMPD"), including Defendants SCHOSSOW and TORYFTER, during the evening hours of October 31, 2015; which continued into the morning hours of November 1, 2015.

402. This lawsuit also concerns Municipal Liability of Defendant City of Mequon ("City"), for the practices, policies, and/or customs identified herein, relating to its citywide, City-Council-Approved "anti-underage-drinking" campaign complete with marketing efforts, prescribed procedures, forms, and protocols; a "social host" ordinance;  and a City-established "Tip411" line, whereby the City sponsored a "telephone hotline" and mobile phone "apps" for persons to contact the CMPD and anonymously report alleged "underage drinking parties" (amongst others, presumably.)

403. As a part of Defendant City's policy, practice, or custom in this regard, Defendant City developed and instituted a streamlined "search warrant application process" for street-ready use by its police department; which was used to violate the Plaintiffs' rights and interests, as alleged herein.

404. On October 31, 2015, at approximately 10:19pm, the City of Mequon Police Department (CMPD) received an anonymous "Tip411" phone call which alleged that an "underage drinking party" was occurring at Plaintiffs' residence; and that said "tip" was indeed, purely anonymous under Wisconsin Law, and lacked any indicia of reliability herein.

405. In response to the "Tip411" call herein, the Mequon Police Department dispatched four squad cars including a "shift supervisor" (Defendant SCHOSSOW) to the Plaintiffs' residence.

406. The "Tip411" call was actually a "hoax" call by a fellow teen, spurned by not having been 'invited' to this particular gathering at Plaintiffs' Residence; and that this particular 'gathering' was specifically organized by Plaintiffs, for the benefit of certain student-athletes from a local WIAA high school football team, as being specifically alcohol-free because the student-athletes were extremely concerned about violating WIAA rules by simply being present at any "underage drinking party."

7

407. Specifically, eight teenagers were originally present at the Plaintiffs' Residence on the night in issue, and that these teens who were originally present, were playing video games and not drinking alcohol at any time; and that these original attendees tested 0% breath-alcohol when administered law enforcement preliminary breath tests ("PBTs") later that night and/or early the next morning – including Plaintiff Todd Robert Reardon who was, at the time, "underage."

408. At some point after the original attendees gathered, three teenage girls and a boy arrived at the Plaintiffs' Residence, who apparently had been drinking alcohol elsewhere, earlier in the evening (and who were the individuals who later tested positive during law enforcement-administered PBTs – and presumably, were the underage persons seen "scattering" and/or locking doors, as referenced below.)

409. When the Mequon Police Officers arrived at Plaintiffs' Residence, they observed and reported that "four" cars were in the driveway and one was parked on the street.

410. Plaintiff Todd Robert Reardon is in the automobile dealership business, and the four cars in the driveway were registered to him, his dealership, and/or to his sons (two of which autos had "692" dealer plates); which to any reasonable officer would make the reported "four cars in the driveway"

8

unremarkable and a non-starter in terms of an "underage drinking party."

411. CMPD Officers proceeded to "secure the perimeter" upon arrival, and allegedly attempted contact at the front door (and by mobile phone);  and were unsuccessful as nobody answered the door or the mobile phone calls.

412. CMPD officers report that they could see through a "half moon" window above the front door, to a "landing" upstairs, where several persons (under the age of 21) were observed 'scattering' and 'peeking out" windows; and the Officers report hearing doors and windows "clicking" (i.e., allegedly being locked.)

413. Defendant SCHOSSOW physically invaded the backyard of Plaintiffs' Residence and took position immediately outside one of the Plaintiffs' Residence's back-yard windows - purportedly to "secure the perimeter";  and in that position, he observed the blinds (on the subject window) were drawn-closed except for the bottom inch or so which remained 'open' - where an adult would have to bend over in order to peek through that crack, to observe the interior of the Plaintiffs' Residence; and that SCHOSSOW did indeed peek through the one inch 'crack' at the bottom of the window, to observe into the interior of Plaintiffs' Residence; and that such observation caused or contributed to the subject Search Warrant to be issued.

414. Defendant TORYFTER also responded to that location immediately outside that rear-window; and likewise (reportedly) peeked-into the Plaintiffs' Residence through the crack in the blinds.

415. Defendants SCHOSSSOW and/or TORYFTER reported that they were able to observe alcohol containers, through the back window blinds, to wit: they reported seeing one "PBR can" on an end-table; and an "open bottle of vodka" on the floor near an end-table (amongst other non-alcoholic beverage containers); however no actual 'drinking' of any beverage was observed.

416. Defendant TORYFTER thereafter applied for a "Search Warrant" pursuant to the aforementioned practices, policies and/or customs of the City of Mequon, in this regard; and completed an "Affidavit In Support of Search Warrant Section 968.23, Wisconsin Statutes[1]" (a true and correct copy of which is Attached hereto, incorporated by reference herein.)

417. Said Affidavit speaks for itself, but for the purposes of this pleading, is in check-the-box format, and was designed and implement to be readily available and quickly completed by law enforcement personnel "outside the office" (e.g., in a police squad car, in order to expedite the legal presentation to a neutral magistrate, to request issuance of a Search Warrant.)

---

[1] Section 968.23, Stats., contains an illustrative "Form" Affidavit, for applying for a search warrant

418. Defendant City's "anti-underage drinking" campaign also included protocols (i.e., practices, policies, or customs) including contacting an "on-call" district attorney -and/or application-approval of the request for Search Warrant by a police captain; it is believed these protocols were "skipped" by Defendants herein.

419. Defendant TORYFTER -pursuant to said practices, policies, and/or customs- checked the boxes and filled the blanks and affirmatively represented that she was investigating a criminal violation, in order to request a Search Warrant; and then rousted Ozaukee County Circuit Court Judge Sandy Williams after midnight (at approximately 1:00am) on November 1, 2015); and requested that Judge Williams execute and issue the check-the-box-form Search Warrant prepared by TORYFTER;  and that based upon TORYFTER's application and requests, Judge Williams issued the Search Warrant for Plaintiffs' Residence (a true and correct copy is attached hereto and incorporated by reference herein.)

420. After Judge Williams issued the Search Warrant, Defendant TORYFTER advised officers on scene by telephone that the warrant was issued and they were commissioned to enter the Plaintiffs' Residence; and thereafter CMPD police officers entered the Plaintiffs' Residence, allegedly via an unlocked door, at approximately 1:15am, and after knocking and announcing.

421. However the door whereby CMPD entered the Plaintiffs' Residence, was "closed and blocked off" because the door's hinges were broken; thus a large table was placed across the interior entrance of the door – such that the officers first "jimmied" the door lock, and then pushed through the broken door and the large table blocking it, in order to enter the house.

422.  After entering the Plaintiff's Residence pursuant to the Search Warrant, Plaintiff John Robert Reardon was detained, searched, and arrested for a municipal ordinance violation for a "Social Host" infraction (ordinance 46-157);

423. That said Ordinance 46-157 was void and unenforceable because it exceeded the authority granted by Ch. 125 Stats, when it improperly expanded the statutory definition of "premises" to include Plaintiffs' Residence, changed "adult" to "person", and where it created a penalty far in excess of that permitted by statute.

424. All told, some seventeen police officers in nine squad cars responded to the Plaintiffs' Residence (i.e., virtually "all available" patrol officers for the Mequon and Thiensville police departments that night / early morning.)

425. TORYFTER and/or SCHASSOW and/or other CMPD officers – after having stood outside said rear-window, intentionally or in reckless disregard of Plaintiffs' rights, tracked mud onto white

carpeting in the Plaintiffs' Residence, causing otherwise-avoidable physical damage to the property.

426. Almost three hours had passed between the time the Defendants arrived on-scene and their entry under the subject Search Warrant - whereas the status quo remained unchanged: the circumstances were under control, nobody came or left, nobody was determined to have been (underage) drinking there; nobody was fighting, vomiting, nor disturbing the peace.

427. Exigent circumstances did not exist at any time under the circumstances, as evidenced by the police actions and inactions as alleged herein.

428. Under the circumstances presented and known to the Defendants the night in question, the two referenced (potential) "Chapter 125" violations under investigation were noncriminal, civil forfeiture offenses for which no imprisonment is possible – as there was no evidence that any under age person at the Plaintiffs' residence had a prior conviction (in which case the violation could possibly be criminal).

429. The only way that either violation under Chapter 125 could be a "crime", would be if an underage person had a prior conviction therefor; and that Defendants TORYFTER and/or SCHOSSOW had no reasonable factual basis to believe that any underage person inside of Plaintiffs' Residence, had previously been convicted of either referenced "Chapter 125" violations;

and thus, TORYFTER did not allege any such "prior" convictions which would turn this otherwise civil-violation into a criminal offense; and knew that this was a municipal-level, civil ordinance violation only and not a criminal investigation (but did not tell the Judge that).

## V.  VIOLATIONS OF LAW

[Plaintiffs re-allege and incorporate by reference the foregoing allegations, as though fully set forth herein].

501. The clearly-established constitutional rights of Plaintiffs' were violated by the Defendants' actions and inactions (and each of them) as alleged herein.

502. Defendants' actions and inactions occurred "under the color of law" (including Defendant City's custom, policy and/or practice);  and proximately caused financial loss and other compensable damage to Plaintiffs, and each of them;

503. Defendants lacked probable cause to arrest Plaintiff JOHN ROBERT REARDON for any valid offense; and Defendants lacked probable cause to believe that any underage persons were "furnished" alcohol by another within Plaintiffs' Residence, contrary to Wisconsin Statute.

504. Defendant TORYFTER applied for the Search Warrant under Chapter 125 of the Wisconsin Statutes, <u>knowing</u> that she was not investigating any crime, under Wisconsin Law, because simple "underage drinking" -by itself- by itself "is not a

crime" (although it may subject the underage person to arrest); and "underage drinking" by itself, would not justify a warrantless entry into a home - because "underage persons" are permitted to drink with their parents under Wisconsin Statute; and therefore, the subject Search Warrant was obtained by fraud.

505. Defendants forged ahead with the Search Warrant they obtained -intentionally, in reckless disregard and deliberate indifference to the law and Plaintiffs' rights and interests; and/or were personally involved with -and personally supervised- the entry, detentions, and physical searches of the Plaintiffs' Residence and the persons inside it.

VI.  4th / 5th / 14th Amendment

601. The methodology and the manner of:  the application for the Search Warrant, the issuance of Search Warrant, and the execution thereupon was unconstitutional, and caused each Plaintiff,  damages under the law and facts.

602. Based upon the allegations contained herein the Defendants, and each of them, violated the clearly established constitutional rights of the Plaintiffs under the 4th, 5th and 14th Amendments to the U.S. Constitution as it relates to the foregoing deprivations and damages caused by Defendants under color of law.

VII. WARRANTLESS SEARCH - "CURTILAGE"

701. By sneaking into the Plaintiffs' backyard, and by standing immediately outside the subject rear-window, and by peeking-into the Plaintiffs' Residence through the closed blinds in order to see into it (i.e., search), the Defendants, and each of them, conducted a warrantless search of the Plaintiffs' Residence in violation of Plaintiffs' clearly established constitutional rights under the 4th , 5th, & 14th Amendments to the U.S. Constitution, and Federal Law.

VIII.  SEARCH BY WARRANT - FRAUDULENTLY OBTAINED

801. The Search Warrant issued herein, was invalid and fraudulent ab initio; and obtained in violation of Plaintiffs' clearly established constitutional rights, to wit:

802. Defendant TORYFTER's application for the subject Search Warrant contained materially false statements of fact - and/or omitted material facts- which intentionally made (and/or made recklessly, indifferent to Plaintiffs' rights); which included Defendant's (mis)representation -under oath- that "there are now located and concealed" in the Plaintiffs' Residence, "evidence of the crime" of "underage alcohol possession" and/or "Furnishing alcoholic beverages to underage persons" – in violation of "Chapter 125, Stats."

803. Defendant TORYFTER intentionally or recklessly failed to provide material facts and information that -had it been provided- would have negated the Judge's probable cause determination, to wit: (1) there was no direct evidence that underage persons were drinking (or being furnished) alcohol in the Plaintiffs' Residence (and indeed, nobody was reported drinking any beverage whatsoever - all that the police observed, was "underage persons" and "alcohol containers" in Plaintiffs' Residence); and (2) Defendant TORYFTER omitted the material fact that the subject "tip" was purely anonymous and not reliable or verified.

804. Defendant TORYFTER's false statements (including omissions) were made knowingly and intentionally, or with reckless disregard for the truth, and that the statements (including omissions) were necessary to the finding of probable cause such that -after excising the false allegation (and/or considering the omissions)- probable cause would have failed and the Search Warrant not issued.

805. Any reasonable law enforcement officer would have known the foregoing, and would not have sworn under oath that evidence of a crime under Chapter 125 of the Wisconsin Statutes, was in the Plaintiffs' Residence; and/or would not have proceeded upon the Search Warrant to violate Plaintiffs constitutional rights in the manner that Defendants did.

806. Defendant TORYFTER nonetheless authored and executed the Affidavit In Support of Search Warrant and  she submitted and prosecuted the application for Search Warrant to the Judge; and after (being misled about the underlying circumstances) the Judge approved and issued the Search Warrant; then Defendant TORYFTER caused the CMPD to execute upon it; and she (and others) entered the Plaintiffs' Residence to search, seize, and arrest based upon a fraudulently obtained Search Warrant.

807. Any reasonable officer in the position of Defendants, would have known that the subject application for the Search Warrant was false and fraudulent, and that no criminal violations were occurring (nor apparent) such that no probable cause existed for the issuance of a Search Warrant;  and that the Search Warrant was obviously deficient on its face, objectively unreasonable, and unconstitutional, to wit:  the application for the search warrant contained glaring deficiencies in terms of reliable indicia of probable cause concerning particular evidence of a crime which would probably be found at Plaintiffs' residences;  rendering any purported official belief in the legality of the search warrant itself, objectively unreasonable, under the totality of the circumstances.

808. No reasonable officer would have believed he was entitled under the law and/or the Search Warrant, to enter Plaintiffs' (private) residence for the purposes of

investigating a municipal violation, and especially "Underage drinking" as Chapter 125 allows for "underage drinking" in the home, as alleged above and as provided by law.

809. Under the circumstances the subject Search Warrant was unconstitutionally applied for, issued, and/or executed upon; and reliance upon the Search Warrants was objectively and unconstitutionally unreasonable; and any reasonable officer would have known same; and all of which caused Plaintiffs the damages alleged herein.

810. Defendants deliberately and recklessly rushed to conclusions and took actions that were patently unfair and which violated Plaintiffs' clearly established constitutional rights including those under the 4th, 5th, and/or 14th Amendments to the U.S. Constitution and Federal Law.

## IX.  Failure to Intervene

901. Defendant SCHOSSOW had actual knowledge of  -and/or deliberate indifference to- the fact that Defendant TORYFTER was fraudulently applying for a warrant to search Plaintiffs' Residence, based upon a non-criminal activity.

902. SCHOSSOW was obligated to intervene and prevent TORYFTER from engaging in such a clear violation of Plaintiff's' constitutional rights; and he was in a position to do so; and he failed to do so.

Case 2:18-cv-01722-NJ   Filed 10/30/18   Page 19 of 24   Document 1

903. Said failure to intervene occurred under circumstances where (1) an objectively reasonable officer would have understood that fellow officers' conduct violated Plaintiffs' clearly established constitutional rights, (2) said Defendant had a realistic opportunity to intervene and/or to protect such harm from occurring (3) Defendant failed to take reasonable steps to prevent said harm from occurring, which failure to act caused Plaintiffs to suffer harm (4) Defendant purposely ignored, condoned, acquiesced, and/or assisted the entry, search, detentions & seizure (5)all under color of law.

X.  Supervisor Liability

1001.    As alleged herein, Defendant SCHOSSOW was the supervisor of CMPD law enforcement officers including Defendant TORYFTER, during the application for, and execution of, the subject Search Warrant; that SCHOSSOW was in a position to properly supervise TORYFTER in this regard; yet  SCHOSSOW failed to properly supervise the application for (and the execution of) the Search Warrant.

1002.    Defendant SCHOSSERT set in motion a series of events that he knew or reasonably should have known, would cause fellow officers to deprive the Plaintiffs of clearly established constitutional rights.

1003.    All of which caused Plaintiffs, and each of them, to suffer the damages they now complain of.

## XI. Municipal Liability (42 USC 14141) & Indemnification - Wis. Stats. §895.46

1101.    Plaintiffs' damages have been caused or contributed to, by Defendant City's policy, practice or customs, as alleged herein.

1102.    The circumstances further reflect that the Defendant City of Mequon has failed to properly train Defendants, and each of them, as to proper search warrant protocols, obligations, and/or limitations - and/or failed to adequately supervise and discipline its officers, agents, and/or apparent agents in that regard;  and that such failure caused or contributed to the Plaintiffs' damages;  therefore such failure to train also renders the City of Mequon directly liable to Plaintiffs under this Complaint.

1103.    Defendant City of Mequon is otherwise liable to defend this action against the Defendants, and to satisfy any judgment entered against them, by virtue of Wis. Stat.§895.46.

## XII.    CAUSATION, DAMAGES  and EQUITY

1201.    By virtue of unlawful actions/inactions alleged above, Defendants (and each of them) have caused Plaintiffs' damages and are now liable to the Plaintiffs -and each of them- for the financial losses and other compensable damages they have caused, which shall be determined by the fact finder in an amount deemed as reasonable compensation.

## XIII.     PUNITIVE DAMAGES.

1301.     The Defendants, and each of them, intentionally, maliciously, and/or recklessly disregarded the law, public trust, limitations of the Search Warrant process, their official duties, and/or the Plaintiffs' constitutional rights; and Defendants intentionally caused unjustified and unreasonable damage and destruction to the Plaintiffs' physical property (carpeting, and door); all of which violated the Plaintiffs' clearly established, constitutional rights.

1302.     All of which entitles Plaintiffs (and each of them) to an award of punitive damages as provided by law, against Defendants, and each of them, to punish the offenders and to deter them and others similarly situated, from similar wrongful acts in the future.

## XIV. CONDITIONS PRECEDENT

1401.     All conditions precedent to this action, within the meaning of Rule 9(c), Fed. R. Civ. Pro., have been performed or have otherwise occurred.

## XV.   DEMAND FOR JURY TRIAL

1501.     The Plaintiff hereby demands a trial by jury of all issues triable of right to a jury.

## XVI. STAUTORY ATTORNEYS FEES

1601.    Plaintiffs are entitled to an award by federal law, for the costs of prosecuting this Complaint including all reasonable attorneys fees and costs associated therewith (experts, investigators, paralegals, and the like).

## XVII.    PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request money judgment in their favor, and each of them, and against the Defendants, and each of them, for a reasonable amount of damages including:

1701.  Monetary damages in an amount that will fairly compensate Plaintiffs for their damages.

1702.  Punitive damages in amount that will justly punish the individual Defendants for their actions and deter others, provide by law;

1703. The Plaintiffs' statutory costs, and a statutory award to Plaintiff for the reasonable attorneys' fees and associated litigation expenses (including expert witness fees), and

1704.  Any other additional relief –in law or equity- to which the Plaintiffs are entitled to under this or subsequent pleading.

Date:    October 30, 2018

By:

  /S/ *Attorney Mark P. Murphy*
Attorney Mark P. Murphy, SBN 01017745
Attorney For Plaintiffs
Law Office of Attorney Mark P. Murphy
657 S. 72nd Street
Milwaukee, WI 53214
414-453-5555
414-453-5520 fax
attorneymarkmurphy@sbcglobal.net